STATE ex rel WEGNER, v. PYLE, Secretary of State.

(226 N. W. 280.)

(File No. 6924. Opinion filed June 25, 1929.)

*Martens & Goldsmith,* of Pierre, for Plaintiff.

*M. Q. Sharpe,* Attorney General, and *E. · D. Roberts* and *R. F. Drewry,* Assistant Attorneys General, for Defendant.

BURCH, J. This is an original proceeding in mandamus to compel the secretary of state to file a petition and take such steps as are necessary to submit chapter 246, Laws 1929, to a vote of the electors under the referendum laws of this state. The petition was presented in time, was in due form, and in all respects sufficient to invoke the referendum, if the law sought to be referred is subject to the referendum provisions of our Constitution. On advice of the Attorney General, respondent rejected the petition on the ground that the law was not subject to the referendum.

The law is designed to shift a portion of the general property tax for use of the general fund to purchasers of automobiles. The details of the law are not important in a discussion of the issues presented. In a general way, it requires a purchaser of an automobile for which certificate of title has not heretofore been issued in this state to pay 3 per cent of the value of the automobile as a tax for use of the general fund of the state, when application is made for registration and certificate of title under chapter 225, Laws 1925, and amendments thereto. .The value, according to the age of the car is based upon all or a percentage of the retail list price fixed by the manufacturers. Section 5 of the act provides that the levy against real and personal property shall be reduced in proportion to the amount of tax collected under this law, making it clear that the Legislature did not intend to raise more revenue, but to raise it from another source. Conceding that this section is not important, as argued by respondent, and that the result would be the same without section 5, since the general property levy is based on the amount of revenue to be raised exclusive of that to be raised by special tax measures, it is mentioned because it is an express declaration of legislative intent which unmistakably discloses the purpose of the law and the reason for its enactment.

The sole question for our determination is the right of the petitioners to refer the law to a vote of the electors. Section 1, art. 3, of our state Constitution, was amended in 1898, and what is known as the initiative and referendum was inserted. That portion of the section pertinent to this inquiry reads:

"The legislative power of the state shall be vested in a legislature which shall consist of a senate and house of representatives, except that the people expressly reserve to themselves the right to propose measures, which measures the legislature shall enact and submit to a vote of the electors of the state, and also the right to require that any laws which the legislature may have enacted shall be submitted to a vote of the electors of the state before going into effect, except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions."

Is the law in question one which the people reserved the right to refer to a vote of the electors, or is it in that excepted class committed wholly to the legislative power of the Legislature? To answer this correctly we must bear in mind that under our system of government the powers of government are derived from the people. The Legislature has only such power as is granted to it under the Constitution. Because prior to the amendment the Constitution granted to the Legislature the legislative power of the state without reservations, respondent argues that the reservations in the amendment are to be regarded as exceptions to be strictly construed. With this we cannot agree. The power conferred upon the Legislature is a grant of power limited and defined by the terms of the grant. The language grants the legislative power of the state to the Legislature, "except that the people expressly reserve to themselves the right * * * to require that any laws which the legislature may have enacted shall be submitted to a vote of the electors of the state before going in effect." This language is plain, and leaves no room for construction either strict or liberal, and, if it stood alone, the question presented in this case could not arise. The power granted to the Legislature is restricted and limited by the right of the people to ultimately adopt or reject any legislative enactment.

But the framers of the Constitution and the people who adopted it evidently saw that, if we are to have a stable and efficient gov-

ernment, some laws may be needed to meet emergencies and to control and govern the daily operations of the government that should go into effect immediately or sooner than would be possible, if suspended pending the taking of a vote by the electorate, so, after the words last above quoted, the following was inserted: "Except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutitions."

This exception constitutes an additional grant of power to the Legislature, and, if any part of the grant is to be strictly construed, it is this exception. There is nothing in the Constitution or in the events surrounding its adoption that indicates the advocates of the initiative and referendum or the people who adopted it had any doubt of the wisdom of this form of direct legislation or had any desire to curb or confine the popular will. Any fair-minded student of political history must concede that the people conferred upon the legislative body more unrestricted legislative power in the excepted field of legislation, not because of any fear that the people themselves were not capable of wisely legislating therein, but because in those particular fields there might be a practical need for more speedy completed legislative action on some occasions than the body of the electors would be able to provide. That this is true is quite convincingly evidenced by the language of the amendment. The Legislature is not given exclusive power in the excepted field. Its power is only concurrent with the power of the people to initiate a law on any subject. The exception applies only to the referendum and the intiative is as applicable in this field as anywhere. On this premise we proceed to consider the question presented. If chapter 246, Laws 1929, falls within an excepted class over which the Legislature has unreserved power to legislate, then this action must be dismissed, otherwise a writ must issue.

 The Attorney General appearing for respondent argues that the history of the adoption of the initiative and referendum and the campaign speeches disclose that it was intended to relieve the people from monopolistic class laws, and to combat and control trusts and monopolies. And that the reason for excepting from the operation of referenndum "such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions

was, 'first because these two large classes of laws had nothing to do with the combat and control of monopolies and trusts; second, the innovation would scarcely have been adopted without such a restriction on the operation of the amendment as would assure that the wheels of the state and its existing institutions would be kept turning and the public peace, health and safety not be wholly left to the mercy of deferred political campaigns; third, the people could not know the financial needs of the state to be supported by tax levies and tax laws nor the revenues available for appropriation.'" We think the second reason mentioned by respondent is the best and probably the only reason for excepting such laws from the operation of the referendum, otherwise why leave them to the initiative?

But we do not think it necessary to go far into the history of this legislation. The constitutional provision is quite plain in its language, which must be construed according to its import where there is no ambiguity. Though it may have been an experiment in government and the product of extremists in turbulent times, it cannot be ignored. The fact that more conservative men are unable to suggest a construction in accord with their views of conservative government is evidence that its language is not ambiguous. Twice since its adoption in 1898 its amendment has been sought and twice rejected, once in 1914 and once in 1922. The last time, when the amendment proposed was to raise the number of petitioners required to invoke the referendum from 5 per cent to 15 per cent of the electors, the vote against the amendment was nearly two against to one in favor of the change, thus indicating its popular approval after 24 years of operation.

This court has never heretofore been called upon to fix the limits of the excepted classes, but in two cases some reference has been made thereto. In State ex rel Richard's v. Whisman, 36 S. D. 260, 154 N. W. 707, L. R. A. 1917B, 1, the question of the right of the Legislature to repeal a primary. election law adopted by the people and to substitute another primary election law with an emergency clause was considered. In the course of the discussion in that case this court said:

"We are of the view that, where the Legislature enacts a law amending or repealing an initiated law, such law may be submitted to referendum vote under the same conditions as may be submitted

to vote any and all laws which are the subject of constitutional referendum, and this wholly regardless of whether or not such amending or repealing act contains an emergency clause; in other words, all those enactments by the Legislature which are the subject of referendum are not subject to the emergency clause, and, vice versa, all those enactments which are subject to the emergency clause are not subject to the referendum. The only lawful function of the emergency clause is to cause an enactment to go into effect as soon as signed by the executive, instead of waiting until the first day of the next July. It must be observed that the initiative and referendum amendment to the Constitution provides that any laws which the Legislature may have enacted shall, upon a proper referendum petition being filed, be submitted to a vote of the state before going into effect, except such laws as may be necessary for the immediate preservation of the public peace, health, or safety, support of the state government and its existing public institutions. Such laws comprehended within this exception, as their names and nature imply, are emergency measures. As to such emergency measures there can be no exercise of the referendum power, under any circumstances, with or without an emergency clause, and this regardless of the size of the majority vote by which they were passed."

But there can be no question that a primary law does not fall naturally into either of the excepted classes, that is, laws necessary for the immediate preservation of the public peace, health, or safety, or laws necessary for the support of the state and its existing public institutions. In Hodges et al v. Snyder et al, 43 S. D. 166, 178 N. W. 575, wherein the validity of an emergency clause in a law pertaining to consolidation of school districts was involved, this court said:

"By the adoption of this amendment, the people reserved to themselves the right to pass upon the wisdom or expediency of any law enacted by the Legislature, unless such law falls within one of the two classes excepted by the amendment. * * * The exception found in section 1 of article 3, names two classes of laws that are not subject to the referendum: First, such laws as are declared by the act itself to be necessary for the immediate preservation of the public peace, health, or safety of the state; and, second, such laws as are necessary for the support of the govern-

ment and its existing public institutions. A law may be necessary for the preservation of the public peace, health, or safety, and still be subject to the referendum, unless the Legislature declares it necessary for the immediate preservation of the public peace, health, or safety. * * * But a law that is necessary for the support of the state government or its existing institutions is not subject to the referendum in any event. * * *

"Whether a law is in its substance and effect a law for the preservation of the public peace, health, or safety, or for the support of the state government and its existing public institutions, is a question for the courts to decide, subject to the rule that in case of doubt the legislative will should be given effect.

Whether an emergency exists which makes it necessary that a law belonging to either one of these two classes should go into immediate effect is a question for the Legislature, to be conclusively evidenced by a declaration of emergency under the provisions of section 22, art. 3, of the Constitution.

Nothing in the foregoing language of this court should be construed as holding that the Legislature can conclusively determine when a law is "necessary" for support of the state government. If it be a law "necessary" for support of the state government, the Legislature may determine its immediate necessity, but, in order to defeat the referendum, the law must not only be for such support, but must be necessary for such support. Respondent argues that the law is a revenue act for the support of the state government and its existing public institutions, and that the necessity for the law is not a matter for this court to determine, but is exclusively within the jurisdiction of the Legislature to determine; that the Legislature by the act of passing the law thereby determined its necessity, which is conclusive upon this court on that question. By this course of reasoning he reaches the conclusion that the law is one necessary for the support of the state government and its existing public institutions. The fault in such logic is that it wholly eliminates the qualifying word "necessary" from the Constitution, and renders it utterly useless. The effect is to except all laws for the support of the state government and its existing public institutions, whereas the Constitution excepts only such laws as are *necessary* for that purpose. What possible difference can there be between saying all laws for that purpose are

excepted and all laws necessary for that purpose are excepted, if it is to be understood that the mere passage of the law conclusively proves its necessity. The effect is identical, and the insertion of the word "necessary" was an idle and meaningless act. We are not at liberty to so construe the fundamental law of the land, if by any fair construction we can give to the word "necessary" a meaning. The people in their sovereign capacity saw fit to confer upon the Legislature unlimited but not exclusive legislative power in certain designated classes of legislation. In all other legislative matters the power is limited and subject to the right of the people to approve or reject such legislative action, if they desire to do so. In granting the unlimited powers to the Legislature, they did not give it as to all legislation for certain designated purposes, but only to such legislation as might be *necessary* for such purposes. As between the two law-making powers, we must give to the word "necessary" some meaning. In doing so we do not presume to say the law is not necessary legislation, since the Legislature in its wisdom has seen fit to enact it. We say that the legislative determination, even though binding on all departments of government, including this court, is not binding on the paramount legislative power vested in the people, and that they may ratify or repudiate it as they see fit.

This court has nothing to do with the necessity of the legislation, but must leave that solely to the determination and will of the lawmaker, but the court must certainly determine the meaning of the grant from the people to the Legislature and determine the powers of each in the field of legislation. There can be no power in the Legislature to conclude by its action a reserved right belonging to the people. To so hold would be to sanction a usurpation of power and make the Legislature supreme. We must interpret the grant and declare its meaning, and permit each legislative power to function in its own field without interference.

Since it is obvious that chapter 246, Laws 1929, is not a law necessary for the immediate preservation of the peace, health, or safety, we have only to decide whether or not it is a law necessary for the support of the state government and its existing public institutions. Conceding that it is in substance and effect a law for the support of the state government, in that its purpose is to raise revenue to defray expenses of the government, we must decide if

it is necessary for such support within the meaning of the grant giving to the Legislature the right of final action.

As we have already shown, we are not to consider the ability or inability of the people to know or act wisely in the matter, but only the adaptability of their machinery in effecting legislation. With this principle in mind, it is not difficult to say when a law is, and when it is not, "necessary," within the meaning of the grant of power to the Legislature. We have only to consider the effect upon such support of the delay incident to referring the law and the consequences, if the law is defeated. If the actual practical support of the government is unaffected by the delay or possible final defeat of the measure, then it cannot be said to be necessary so as to prevent its reference to a vote. That, we think, was the very evident intent of the framers of the Constitution in using such language.

Respondent suggests that the word "necessary" is capable of many meanings, and that it may mean expedient, useful, or proper as well as essential, depending on its use. No doubt this is true, but we do not think it requisite to define the word in this case, as it is apparent that the support of the government is wholly unaffected by either delay or final defeat of the measure. While it is intended to raise revenue, and the support of the government is dependent upon revenue, it does not purport to increase revenues, but expressly provides that it shall not do so. It simply shifts the tax from one to another. So far as efficient operation of the government is concerned, it makes no difference from what source revenue is derived, so long as it is available. True, the law may be very necessary for equitable distribution of the burden of taxation, but that necessity does not prevent its being referred to a vote. If it is necessary, the voters can adopt it. On the other hand, in their opinion it may be inequitable and unjust, in which event they can defeat it. The distribution of the burden of taxation is an economic question which we think the people intended to keep within their control so far as possible without slowing the wheels of government. While we are unable to agree with respondent's contentions, we acknowledge the very able brief that the Attorney General has submitted. A number of cases have been cited from other states from which some analogy has been sought. State v. Dixon, 59 Mont. 58, 195 P. 841, is cited as authority for conclud-

ing revenue laws are not subject to the referendum. The Constitution of Montana is so different that the case has no application. The Montana court says its Constitution is plain. There the exception is to "laws relating to appropriations of money," and in that class neither the initiative nor the referendum applies. Constitution of Montana, art. 5, § 1. The question in that case was whether a law passed by the people under the initiative was a law relating to appropriation of money.

The only state having the same constitutional provisions as ours is Washington. Decisions of other states have not been found which can aid us.

We briefly refer to a few Washington cases. State ex rel Brislawn v. Meath et al, 84 Wash. 302, 147 P. 11, involved the validity of an emergency clause attached to a law changing the personnel of the board of state land commissioners. It was held the law was not one for the immediate preservation of the public peace, health, or safety, or the support of state government, and was therefore subject to the referendum, and the emergency clause was unconstitutional. It was therein declared:

"The true rule is: The referendum cannot be withheld by the legislature in any case except it be where the act touches the immediate preservation of the public peace, health, or safety, or the act is for the financial support of the government and the public institutions of the state, that is, appropriation bills."

We are committed to the rule that an emergency clause may be declared unconstitutional under similar circumstances. State ex rel v. Whisman, supra, and Hodges v. Snyder, supra.

State ex rel v. Howell, 85 Wash. 294, 147 P. 1159, Ann Cas. 1916A, 1231, involved a police regulation requiring carriers of passengers by motor vehicles to obtain license and comply with claimed safety requirements. An emergency clause attached to this act was upheld on the ground that the law was for the immediate preservation of the public safety. Weight was given to the Legislature's declaration that an emergency existed, coupled with the rule that courts should not declare a law unconstitutional, if there be any doubt as to its conflicting with the Constitution. In the case at bar, we are not called upon to declare any part of the act before us unconstitutional. The Legislature has not declared an

emergency. We have only to determine if the act is subject to referendum and direct the secretary of state accordingly.

In State ex rel Blakeslee v. Clausen, 85 Wash. 260, 148 P. 28, Ann Cas. 1916B, 810, appropriations for highways and other state activities were involved. The court held that such appropriations were not subject to the referendum.

The case of State ex rel Short v. Hinkle, 116 Wash. 1, 198 P. 535, is an original proceeding in mandamus to compel the secretary of state to file a petition to refer a law known as the "administrative code." One section of the law recites that the revenues of the state are insufficient to support the state government and its its existing public institutions as at present organized, and that it is necessary that the existing administrative agencies of the state government be consolidated and co-ordinated in order to bring the cost of supporting the state government and its existing public institutions within the possible revenues of the state. Therefore the action is necessary for the support of the state government and its existing public institutions, and shall take effect immediately. The question before the court was, Was such law subject to the referendum? The court answers the argument of relators that the change in the method of administration is not necessary, for the reason that the state always possesses the power of taxing in any amount that is necessary to perpetuate any form of administration which may be in existence, by saying:

"Although the state possesses unlimited power of taxation such unlimited power does not produce unlimited revenue and a point is attainable—and the legislature declares it is already reached.—where additional taxation produces nothing but defaulted realty and personalty in the hands of the collector, and when the levy of additional taxes creates burdens which parch the source of revenue, the levies tend to destroy rather than support the state government."

The court concludes the Legislature possessed the opportunity to know the facts, and its declaration that such facts exist is conclusive on the court, unless the court can say from judicial knowledge that a patent contradiction exists upon the face of the legislative enactment. But this opinion was concurred in by a bare majority of the court. Four members of the court dissented. There was a similar division of the court in the Brislawn Case

above cited, and, while the personnel of the court is not exactly the same, those who supported the Brislawn Case now dissent in this case, with the exception of Parker. Since we are committed to the rule of the Brislawn Case, it may be that the dissenting opinion is the better authority in this state.

But we need not decide whether the decision of the Washington court was right or wrong or what our attitude would be if the same case was before us. The law before us is not, as was claimed in the Washington case, a law to give the government and its existing public institutions the greatest benefit from the revenues which are actually received, or to protect the resources of the state from which those revenues derive.

The true test in determining whether or not a law is necessary for the support of the state government is, What will be the effect upon the state government if the law is suspended until a vote can be taken, or what will be the effect if it is finally defeated? In the instant case, it is plain that the support of the government will be unaffected in any manner. Since the organization of the state, the government has functioned without the law, and it will continue to function in the same manner if the law never becomes operative. We need not anticipate what questions may arise if in some future case the effect upon the government becomes a question of fact or how this fact will be determined, or upon whom the burden of proof will lie. We have in the law now before us an express declaration of the Legislature requiring that the revenues now derived by levy upon and taxation of property be reduced in the amount of the revenue derived from the new source. Thus on the face of the enactment its intended effect appears by the Legislature's declaration. We do not have to resort to other proof. We therefore hold the act subject to the referendum.

A peremptory writ is granted and allowed. No costs to be taxed.

CAMPBELL and BROWN, JJ., concur.

POLLEY, J. (dissenting). I am able to concur in the conclusion reached by the majority of the court in this case. The referendum clause found in section 1, of article 3 of the Constitution, provides that all laws enacted by the Legislature shall, before going into effect, be submitted to a vote of the electors of the state,

"except such laws as may be necessary for the \* \* \* support of the state government and its existing public institutions."

Chapter 246, Laws 1929, is a special tax law, enacted for the purpose of raising revenue for the support of the state government and its various governmental institutions. This makes it purely a revenue law. This much is conceded by the majority opinion. It is also conceded by the majority of the court that revenue laws are necessary for the support of the state government and its existing public institutions. This brings the law involved clearly within the exception named in the referendum clause of the Constitution. But, says the majority of the court, while revenue laws are necessary for the support of the state government, and while chapter 246 is a revenue law, still this law is not *sufficiently* necessary to bring it within the excepted class; and it is upon the construction of the word "necessary" that the majority opinion is based.

It is the position of the majority of the court that the word "necessary," when used in the referendum clause, means that, in order to come within the exception named in that clause, a law must be so absolutely essential that the state government and its various instrumentalities cannot function without the operation of such law. This is the narrowest possible construction that can be put upon this word, and a construction that I do not believe was ever contemplated by the author or the supporters of the referendum provision. No other court has ever given the word "necessary" so constricted a meaning.

One revenue law, especially if the revenue to be acquired thereby is to go into the general fund, is as much for the support of the state government and its existing public institutions as another; and the meaning of the exception is the same as though it read: "Except such laws as may be enacted for \* \* \* support of the state government and its existing public institutions." The use of the word "necessary" was by the merest chance, and should be given no special significance.

In the case of Hodges v. Snyder, 43 S. D. 168, 178 N. W. 575, this court, after a thorough consideration of the referendum amendment and of all the decisions of other courts touching upon the subject, decided that "a law that is necessary for the support of the state government or its existing" public "institutions is not

subject to the referendum in any event." This declaration of the law is, in effect, overruled by the decision of the majority of the court in this case, and hereafter in deciding whether a revenue law is or is not subject to the referendum provision, the court will be compelled to ascertain the degree of the necessity of the law for the support of the state government and its existing public institutions.

The writ should be denied.

SHERWOOD, P. J. I concur in this dissenting opinion.