STATE OF FLORIDA ex rel. ELLIS WOODWORTH, *Relator*, v. ERNEST AMOS, Comptroller, *Respondent*.

Original Mandamus.

Opinion filed July 27, 1929.

*Whitaker Brothers* and *C. L. Waller*, for Relator;

*H. E. Carter*, Assistant Attorney General, for Respondent.

PER CURIAM.—This cause having been submitted to the Court upon respondent's motion to quash the alternative writ of mandamus issued herein and upon briefs

of counsel for the respective parties, and the Court being now advised of its judgment to be given in the premises, it is ordered and adjudged by the Court that the alternative writ of mandamus heretofore issued in this cause be and the same is hereby quashed.

WHITFIELD, TERRELL, STRUM, BROWN AND BUFORD, J. J., concur.

ELLIS, C. J., dissents.

STRUM, J.—Upon further consideration of this cause on rehearing it is considered that the motion to quash the alternative writ herein should be denied.

Relator was appointed an inspector under Chapter 10149, Acts of 1925, of which Chapter 11998, Acts of 1927, is amendatory in certain respects. The latter amends the former by re-enacting the former Act with certain changes in language so that the "Division" of Inspection was by the 1927 Act thereafter designated as the "Bureau" of Inspection; the salary of the Inspectors, of whom relator was one, was increased from $1800 to $2400 per annum; and the method of payment thereof prescribed as hereinafter stated. Certain other changes in language occurred in the 1927 Act which were not material in this controversy. Those provisions of the Act of 1925 relating to the method of appointment, the tenure, and the discontinuance or termination of office of Inspectors, were unchanged by the 1927 Act. Neither the "Division" of Inspection created by the 1927 Act, nor the office of Inspector to which relator was appointed thereunder, was abolished by the 1927 Act. The changes pertinent to this controversy consisted merely of changed nomenclature, amounts of salary, and the added provision with reference to the payment of salaries, which will be hereinafter quoted, and which further strengthens relator's position in this controversy.

The 1927 Act having merely re-enacted the 1925 Act, under which relator was appointed, by repealing the language of the Act with the changes stated, and not having abolished the office held by relator under the 1925 Act, nor the Bureau of Division in which that office was created and then existed, the 1925 Act was not abrogated or annulled by the 1927 Act, nor was its operation interrupted. The former was continued in effect by the latter. The 1927 Act is to be regarded as new legislation only in so far as it differs in substance from the 1925 Act. See Perry v. Consolidated, etc., School District, 89 Fla. 278, 103 So. R. 639; Forbes v. Board of Health, 27 Fla. 189, 9 So. R. 446; Florida C. &. P. R.Co. v. Foxworth, 41 Fla. 1, text 59, 25 So. R. 338.

Article 16, Section III, of the Constitution provides that "the salary of each officer shall be payable monthly on his own requisition." The relator performs under the statute all the former duties of a Food, Drug and Fertilizer Inspector for the Chemical Division of the Department of Agriculture, and other duties, and in addition is "vested with all power and authority and every obligation and restriction which are vested in other police officers." Relator is therefore a State officer. See Advisory Opinion, 76, Fla. 500, 80 So. R. 17; Chapter 11998, *supra*, Section 2.

If relator still held office for the period in question, he would be entitled to his salary on his own requisition. Advisory Opinion, 74 Fla. 250, 77 So. R. 102. Chapter 11998, Acts of 1927, Section 2, expressly provides that the salary of inspector in the Bureau of Inspection shall be "payable monthly in the same manner as other State officials." The latter provision is one of the amendatory features of the 1927 Act. Section 3 of the 1925 Act, which is left undisturbed, provides that all funds arising from fees collected under the Act shall be placed in a special fund

created in the office of the State Treasurer, and the "expenses" incurred in carrying out the provision of the Act shall be paid from such funds upon warrant drawn by the Comptroller, which warrants shall be issued upon voucher approved by the Commissioner of Agriculture. If the provision just quoted purports to require the approval of the Commissioner of Agriculture upon the salary requisition of the inspectors as a prerequisite to the issuance of a warrant by the Comptroller, such requirement is necessarily in conflict with the Constitution, because the inspector is an officer and under the Constitution his salary is payable on his own requisition, regardless of the character of the fund from which it is paid. Of course, it is competent for the Legislature to require, as it has required, that inspectors' expense accounts shall receive the approval of the Commissioner of Agriculture before payment.

The relator continued to function as an inspector after the effective date of the 1927 Act, and since the latter Act did not interrupt the operation of the 1925 Act, relator is entitled to his salary until his tenure of office is lawfully terminated.

The language of Section 2 of the 1927 Act, with reference to the discontinuance of inspectors, or the termination of his term of office, is somewhat anomalous. Both Acts provide that the inspectors shall hold office "until such time as the Governor may deem proper to discontinue the services of such inspector, or until such time as the Commissioner of Agriculture may advise the Governor either that the services of such inspector are not satisfactory or that the services of such inspector are no longer required by the Bureau of Inspection." The Acts further provide that the commission shall run "during the pleasure of the Governor, not exceeding the term of four years, and the Governor is hereby expressly authorized to terminate the

appointment of an inspector at any time when in his judgment the best interests of the State will be subserved by discontinuing the service of such inspector."

. It is under the provision first quoted that respondent contends that relator's term of office was lawfully terminated on January 21, 1928, when the Commissioner of Agriculture advised the Governor that the services of relator were not satisfactory.

If the Act be construed to mean that the Commissioner of Agriculture alone may plenarily dismiss the inspectors, then they would not serve "at the pleasure of the Governor" as provided by the Act, but at the pleasure of the Commissioner of Agriculture as well. If the Commissioner of Agriculture possesses the power to plenarily dismiss the inspector it would be a mere empty formality for the Commissioner to "advise the Governor" that the services of the inspector "are not satisfactory" or "are no longer required," as the Governor, under that construction of the Statute, would have no power or duty to perform under such circumstances, the dismissal having been accomplished by the act of the Commissioner. If the statute be taken literally in this respect, the result would be that the term of an officer, appointed and commissioned by the Governor to serve during the pleasure of the Governor, could be plenarily terminated by the Commissioner of Agriculture, thereby effecting the dismissal of the incumbent, even though the Governor did not concur in such action, which is apparently the very situation now before us.

Article 4, Section XV, of the Constitution provides for the suspension by the Governor, and removal by the Governor by and with the consent of the senate, of officers not subject to impeachment. Even if the statute in this respect provides merely for terminating the period during which an appointed inspector may hold his office, as dis-

tinguished from a suspension or removal from office under the Constitution,.upon the theory that these inspectors are not such officers as are contemplated by that Article, and that since they are working under the supervision of the Commissioner of Agriculture it was contemplated by the Act that the Commissioner should have the plenary power to dismiss them, then the anomalous result follows that the Governor may nevertheless under the provisions of the Act remove the inspector and terminate his tenure, even though the Commissioner of Agriculture did not concur in that action. If the Act be construed to mean that either the Governor or the Commissioner, acting alone and independently of the other, each possessed the plenary power of dismissal, such construction will lead, in cases of conflict in opinion between those officials, to the dismissal of inspectors by one, against the judgment of the other.

If on the other hand, the Act be construed to mean that the action of the Commissioner of Agriculture is advisory only, and that the ultimate and plenary power to dismiss an inspector reposes in the Governor, from whence the inspector's appointment came, such construction would not only render the Act more consistent with our general plan of government under the Constitution and Statutes, but also more consistent with the appointive power, which under the Act, is expressly reposed in the Governor, as to which there is no question, and who may appoint such inspector "as the same may be recommended in writing by the Commissioner of Agriculture." To so construe the statute eliminates the apparent anomaly of authorizing a cabinet officer to plenarily dismiss an appointee of the Governor, even though the Governor does not concur in that action. It, therefore, must have been the intention of the Legislature in passing the Act that Commissioner of Agriculture acts in an advisory capacity to the Governor

in dismissals as he does in appointments, and that the ultimate and plenary power to remove, as well as to appoint, the inspector is reposed in the Governor. It would follow from such construction that relator would be entitled to his salary for the period in question, the Governor not having acted upon the advice of the Commissioner of Agriculture given on January 21, 1928, and the motion to quash the alternative writ should therefore be denied.

It is so ordered.

ELLIS, BROWN AND BUFORD, J. J., concur.

WHITFIELD, J. (dissenting).—An alternative writ of mandamus issued from this Court alleges in substance that the relator during the months of February, March, April, May and from June 1st to June 24th, 1928, and for a long time prior thereto was duly appointed, commissioned, authorized and acting inspector in the Bureau of Inspection of the Department of Agriculture of the State of Florida, and as such was entitled to be paid by the State of Florida a salary at the rate of $2400.00 per year, of $200.00 per month pursuant to the terms and provisions of Chapter 11998 of the laws of 1927 of the State of Florida; that relator as such officer of the State of Florida, to-wit, as an inspector in the Bureau of Inspection of the Department of Agriculture of the State of Florida, was appointed to the office aforesaid by Governor John W. Martin on the 18th day of July, 1925, and that he did hold said office and perform the duties thereof until the 24th day of June, 1928, and that he received the salary provided by law for said office with the exception of the months of February, March, April, May and from June 1st to June 24th, 1928; that he is now due from the State of Florida as such officer the sum of $959.84, which said salary is payable

to him upon his own requisition drawn upon the State Treasurer upon a warrant issued by the said respondent; that relator has drawn his requisition for said salary for the months aforesaid from the State of Florida through the said respondent, but that the said respondent refused to issue his warrant to the said relator because the same has not been approved by the Commissioner of Agriculture of the State of Florida. Relator shows unto the Court that Section 2 of Chapter 11998 of the laws of 1927 of the State of Florida provides as follows:

"Each inspector appointed under the provisions of this Act shall receive a salary of Twenty-four Hundred ($2400.00) per annum, payable monthly in the same manner as other State officials . . . . . ."

and that the said Act does not require that a requisition for salary due the said relator shall be approved by the Commissioner of Agriculture, but the said Act does require that before the relator could be reimbursed for his expenses incurred while on official business that

"Such bill for expenses must be approved by the Commissioner of Agriculture . . ."

The writ commands the respondent, Ernest Amos, Comptroller of the State of Florida to issue and deliver to the said Ellis Woodworth warrants for the sum of $959.84 for the salary due as aforesaid; or to show cause for not doing so, etc.

The answer of the respondent denies that during the months stated in the alternative writ, the relator was a duly appointed and commissioned inspector in the Bureau of Inspection in the Department of Agriculture of the State of Florida, and denies that as such he was entitled to be paid by the State of Florida a salary at the rate of $2400.00 per year, or $200.00 per month, pursuant to the

terms and provisions of Chapter 11998, Laws of Florida, Acts of 1927; and avers that the Relator was on the 18th day of July, A. D. 1925, appointed and duly commissioned to be Inspector for the Division of Inspection in the Department of the Commissioner of Agriculture; that the Relator was never appointed and commissioned to be an inspector for the Bureau of Inspection in the Department of the Commissioner of Agriculture of the State of Florida, created by Chapter 11998, Laws of Florida, Acts of 1927, and for this reason the Relator was not and is not entitled to a salary from the State of Florida as an Inspector for the Bureau of Inspection of the Department of Agriculture of the State of Florida under the terms and provisions of said Chapter 11998; Respondent denies that the Relator was appointed to the office of Inspector for the bureau of Inspection in the Department of Agriculture of the State of Florida by the Governor of the State of Florida on the 18th day of July, 1925, and that he held said office and performed the duties thereof until the 24th day of June, 1928, and that he is now due from the State of Florida as such officer the sum of $959.84, which is payable to him upon his own requisition drawn upon the State Treasurer upon a warrant to be issued by the respondent, for the reason that the Bureau of Inspection in the Department of Agriculture was first created by Act of the Legislature and known as Chapter 11998, Acts of 1927, which became a law by the approval of the Governor on the 27th day of May, 1927. Therefore, it was not and is not the duty of respondent, nor is he required or authorized by law to issue and deliver to the relator warrants on the treasurer of the State of Florida for salary as an Inspector for the Bureau of Inspection in the Department of Agriculture of the State of Florida under an appointment and commission issued to the relator by the Governor of Florida on

the 18th day of July, 1925; respondent admits that the relator has drawn his requisition for salary as an inspector for the Bureau of Inspection in the Department of Agriculture in the State of Florida at $200.00 per month for the period from February 1st to June 24th, 1928, and respondent further admits in addition to the reasons hereinbefore mentioned, that he refused and still refuses to issue warrant, or warrants, to the said relator on the Treasurer of the State of Florida for the further reason that relator's salary requisitions for said months were not and had not been approved by the Commissioner of Agriculture of the State of Florida. That as a basis for respondent's refusal to honor the relator's salary requisition and issue the State's warrant thereon, without the approval of the Commissioner of Agriculture, respondent respectfully shows unto the Court that it is provided in Section 3, of Chapter 10149, Laws of Florida, Acts of 1925—the first and second sections of which were amended by Chapter 11998, Acts of 1927—that the expenses incurred in carrying out the provisions of said Act, which includes the salary of Inspectors for the said Department, shall be paid out of funds arising from fees authorized by law for oil inspection, food, drug and fertilizer inspection, and citrus fruit inspection, from the passage of said Act, upon warrant drawn upon the Comptroller, which warrant shall be issued upon vouchers approved by the Commissioner of Agriculture. Therefore, it is submitted that respondent is not authorized to draw a warrant upon said funds for the payment of expenses incurred in carrying out the provisions of said Act, including the salary of inspectors appointed and commissioned thereunder, except upon vouchers approved by the Commissioner of Agriculture; respondent, while not admitting that the relator was a duly appointed, commissioned, authorized and acting inspector for the Bureau of

Inspection in the Department of Agriculture of the State of Florida, as created by Chapter 11998, Acts of 1927, would respectfully show unto the Court that by Section 2, of Chapter 10149, Laws of Florida, Acts of 1925, as amended by Chapter 11998, Laws of 1927, it is provided that the Inspectors appointed by the Governor under the terms of said Act shall each hold such office until such time as the Governor may deem proper to discontinue the service of such inspector, ''or until such time as the Commissioner of Agriculture may advise the Governor either that the services of such inspector are not satisfactory, or that the services of such inspector are no longer required by the Bureau of Inspection;'' that respondent is advised and believes, and so states as a fact, that the Commissioner of Agriculture of the State of Florida on the 21st day of January, 1928, did advise the Governor of the State of Florida that the services of the relator were not satisfactory, and that he, the Commissioner of Agriculture, would not after February 1, 1928, approve any other salary or expense vouchers for the relator. Respondent states upon information and belief, which he verily believes to be true, and so states as a fact, that the relator did not act or render any service to the State of Florida as an inspector for the Bureau of Inspection in the Department of Agriculture of the State of Florida at any time during the period from February 1st to June 24th, 1928, or at any other time after January 31, 1928.

The respondent also presented a motion to quash the alternative writ.

The relator moved for a peremptory writ upon grounds alleging that the answer is insufficient as a defense to the writ.

The Court by a per curiam order quashed the alternative

·writ. Relator applied for a rehearing and the cause has been fully argued.

Sections 1, 2 and 3, of Chapter 10149, Acts of 1925,

"created in the Department of the Commissioner of Agriculture of the State of Florida the Division of Inspection. The Division of Inspection created by this Act shall be under the control and supervision of the Commissioner of Agriculture of the State of Florida";

and authorized the Governor,

"to appoint Inspectors for the Division of Inspection as provided by law as the same may be recommended in writing by the Commissioner of Agriculture. The Inspectors appointed by the Governor under the provisions of this Act shall each hold such office until such time as the Governor may deem proper to discontinue. the services of such Inspector, or until such time as the Commissioner of Agriculture may advise the Governor either that the services of such Inspector are not satisfactory or that the services of such Inspector are no longer required by the Division of Inspection. Commissions issued to such Inspectors shall run from the date thereof during the pleasure of the Governor not exceeding the term of four years, and the Governor is hereby expressly authorized to terminate the appointment of any Inspector at any time when in his judgment the best interests of the State will be subserved by discontinuing the services of such Inspector";

and provided that,

"All funds arising from fees authorized by law for Oil Inspection, Food, Drug and Fertilizer Inspection, and Citrus Fruit Inspection from and after the passage of this Act shall be paid into the General Inspection Fund, which said Fund is hereby created in the office of State Treasurer, and the expenses incurred in carrying out the provisions of this Act, together with any other expenses incident to carrying out the provisions of law in connection with such inspections shall be paid from such fund upon warrant drawn by the Comptroller, which warrants shall be issued upon vouchers approved by the Commissioner of Agriculture."

Chapter 11998, Acts of 1927, amending Sections 1 and 2 of Chapter 10149, Acts of 1925, and repealing all conflicting laws,

"created in the Department of the Commissioner of Agriculture of the State of Florida the Bureau of Inspection. The Bureau of Inspection created by this Act shall be under the control and supervision of the Commissioner of Agriculture of the State of Florida";

and authorized the Governor,

"to appoint Inspectors for the Bureau of Inspection as provided by law as the same may be recommended in writing by the Commissioner of Agriculture. The Inspectors appointed by the Governor under the provisions of this Act shall each hold such office until such time as the Governor may deem proper to discontinue the services of such Inspector, or until such time as the Commissioner of Agriculture may advise the Governor either that the services of such Inspec-

tor are no longer required by the Bureau of Inspection. Commissions issued to such Inspectors shall run from the date thereof during the pleasure of the Governor not exceeding the term of four years, and the Governor is hereby expressly authorized to terminate the appointment of any Inspector at any time when in his judgment the best interests of the State will be subserved by discontinuing the services of such Inspector.''

Even if the Act of 1927 amending Sections 1 and 2 of the Act of 1925, authorizing the Governor ''to appoint Inspectors for the Bureau of Inspection'' did not terminate the terms of office of those who were appointed by the Governor to be ''Inspectors for the Division of Inspection,'' both the Act of 1925 and the Act of 1927 provide that the Inspectors appointed by the Governor ''shall each hold such office until such time as the Governor may deem proper to discontinue the services of such Inspector, or until such time as the Commissioner of Agriculture may advise the Governor either that the services of such Inspector are not satisfactory or that the services of such Inspector are no longer required by the Division (or the Bureau) of Inspection''; and that ''Commissions issued to such Inspectors shall run from the date thereof during the pleasure of the Governor not exceeding the term of four years, and the Governor is hereby expressly authorized to terminate the appointment of any Inspector at any time when in his judgment the best interests of the State will be subserved by discontinuing the services of such Inspector.''

Under Section 15, Article IV of the Constitution, all appointed or elected officers, who are not liable to impeachment, may be suspended from office by the Governor for stated causes, and such officers may be removed from office

by the Governor and the Senate for the same stated causes, and the Governor may fill the vacancies by appointment. But the statutes above quoted do not provide for suspension or removal from office. The provisions authorize appointments and provide for terminating the period during which an appointed Inspector may hold his office by any one of the three ways as quoted above one of which is that "the Inspectors appointed by the Governor * * * shall each hold office * * * until such time as the Commissioner of Agriculture may advise the Governor either that the services of such Inspector are not satisfactory, or that the services of such Inspector are no longer required." The statute authorizing the appointments to be made may provide for ending the terms as quoted above, and each provision does not unlawfully invade the prerogatives of the Governor.

The answer avers "that respondent is advised and believes, and so states as a fact, that the Commissioner of Agriculture of the State of Florida on the 21st day of January, 1928, did advise the Governor of the State of Florida that the services of the relator were not satisfactory, and that he, the Commissioner of Agriculture, would not after February 1, 1928, approve any other salary or expense vouchers for the relator," and that "respondent states upon information and belief, which he verily believes to be true, and so states as a fact, that the relator did not act or render any service to the State of Florida as an Inspector for the Bureau of Inspection in the Department of Agriculture of the State of Florida at any time during the period from February 1st to June 24th, 1928, or at any other time after January 31, 1928."

These averments are admitted by the motion for a peremptory writ and are not overcome by anything appearing in the record. The necessary result is that the relator's

term ended when the Commissioner of Agriculture advised the Governor that the services of relator were not satisfactory and that he would not after February 1st, 1928, approve any other salary or expense vouchers for the relator, even if the relator's appointment as an Inspector for the Division of Inspection under Chapter 10149, did not end upon the taking effect of Chapter 11998, amending Chapter 10149, by establishing a Bureau of Inspection and authorizing the Governor to appoint Inspectors for the Bureau of Inspection. The relator's term of office and his service certainly ended in January, 1928, and his claim for salary after that time has no foundation predicated upon his commission or upon his services rendered.

Section 3, Chapter 10149, which was not repealed by Chapter 11998, provides that "the expenses incurred in carrying out the provisions of this Act, together with any other expense incident to carrying out the provisions of law in connection with such inspections shall be paid from such fund upon warrant drawn by the Comptroller, which warrants shall be issued upon vouchers approved by the Commissioner of Agriculture. "The salaries of Inspectors on a part of the "expenses incurred in carrying out the provisions of this Act."

Section 3, Article XVI of the Constitution as amended in 1922, provides that "the salary of each officer shall be payable monthly upon his own requisition."

Even if this organic provision is applicable to the class of officers to which the relator belongs as an Inspector for the Division or Bureau of Inspection "in the Department of the Commissioner of Agriculture," it is competent for the legislature in providing for a particular fund such as the General Inspection fund here, and in regulating its disbursement from the State Treasury, to require vouchers to be approved by the Commissioner of Agriculture, for

the salaries as well as the expenses of inspectors whose official acts are under the direction of the Commissioner of Agriculture. The answer shows that no such approved voucher has been presented for the salary here claimed.

The relator has not shown a right to a peremptory writ and the alternative writ should be dismissed.

TERRELL, C. J., concurs.

STRUM, J.—This cause comes on to be further heard upon the return of the respondent to the alternative writ, and upon relator's motion for peremptory writ, the return notwithstanding.

The only question raised by respondent's return which was not considered on the motion to quash the alternative writ, which motion has been denied, is presented by certain averments in the return to the effect that acting under that clause of the Act providing that such inspectors shall each hold office until such time as the Governor may deem proper to discontinue the services of such Inspector, "or until such time as the Commissioner of Agriculture may advise the Governor either that the services of such Inspector are not satisfactory, or that the services of such Inspector are no longer required by the Bureau of Inspection," the Commissioner of Agriculture on the 21st day of January, 1928, advised the Governor that the services of the relator were not satisfactory, and that he, the Commissioner of Agriculture, would not after February 1, 1928, approve any other salary or expense vouchers for the relator. We have held, however, that the services of relator could not be discontinued in that manner. The return further avers that the relator did not act or render any service as an Inspector at any time during the period from February 1st to June 24th, 1928, the date on which the relator resigned. Since, however, the relator must perform his duties under

230

the directions of the Commissioner of Agriculture and since the Commissioner of Agriculture refused to recognize relator as an Inspector after January 31, 1928, the relator was thereby prevented from performing such services. It is not shown nor alleged that the relator declined or refused to perform the services of an Inspector during that period. Under those circumstances, the fact that relator did not perform the services of an Inspector during the period in question is not such an abandonment of his office as will defeat his right to receive the salary thereof until the time when his services were dispensed with according to law, which was on June 24, 1928.

It is therefore ordered that the peremptory writ issue as prayed.

ELLIS, BROWN AND BUFORD, J. J., concur.

TERRELL, C. J., AND WHITFIELD, J., dissent.