J. A. JOHNSON, as Sheriff of Polk County, *Plaintiff in Error*, v. THE STATE OF FLORIDA ex rel. LATT MAXCY, *Defendant in Error*.

Division A.

Opinion filed June 6, 1930.

1312

*J. H. Peterson*, County Solicitor; *Peterson, Carver, Langston & O'Quin*, and *Fred H. Davis*, Attorney General, for Plaintiff in Error;

*Whitaker Brothers*, for Defendant in Error.

ELLIS, J.—In March, 1929, Latt Maxcy was arrested and taken into custody by the sheriff of Polk county upon a capias issued out of the Criminal Court of Record of that county upon an information charging Maxcy with obstructing a citrus fruit inspector in the discharge of his duty. Omitting the formal parts of the information the accusation is framed in the following words:

"Did unlawfully, wilfully and knowingly obstruct an authorized citrus fruit inspector who was then and there duly appointed, qualified and acting, to-wit: Sinclair Wells, and who was then and there in the performance and in discharge of a duty imposed upon him by law, to-wit: the inspecting of citrus fruit as required and provided by the provisions of Chapter

10103, Laws of Florida, Acts of 1925, by the said Latt Maxcy then and there placing salt or other ingredient, the exact nature of which is unknown to the county solicitor in a container containing citrus fruit juice which the said inspector, Sinclair Wells, then and there intended to test, the result of the placing of such salt or other ingredient being to change the contents of the citrus fruit juice and obstructing the said inspector in the making of proper test required by law as aforesaid, the said Latt Maxcy then and there knowing that the said Sinclair Wells was an authorized citrus fruit inspector as aforesaid in the discharge of his duties aforesaid, placing of said ingredient wilfully with intent to obstruct the said Sinclair Wells, authorized citrus fruit inspector, as aforesaid.''

Maxcy applied for and obtained a writ of *habeas corpus* and upon the hearing was discharged from custody by order of the circuit judge. The State, having obtained an order permitting it to take a writ of error, seeks to reverse the judgment. The offense was alleged to have been committed on November 4, 1928.

The provisions of Chapter 10103, Laws of Florida, 1925, as amended by Chapter 11875, Laws of Florida, 1927, which are applicable to this case, consist of Sections 12 and 13 of the act. They in substance provide that it shall be unlawful for any person to obstruct or resist any authorized inspector in the performance or discharge of any duty imposed upon or required of him or her by the provisions of the act or by any rule or regulation prescribed by the Commissioner of Agriculture as authorized by the act, and for a penalty to be imposed upon any person who violates any of the provisions of the act or reasonable rule or regulation promulgated by the Commissioner of Agriculture.

Chapter 10103, *supra*, was enacted, as its title declares,

to protect the sale or transportation of citrus fruit that is immature or otherwise unfit for consumption. Provision was made for the inspection of citrus fruit by citrus fruit inspectors, who under the provisions of the act of 1927, Chapter 11875, were to be employed by the Commissioner of Agriculture and such inspectors are required to be governed in the discharge of their duties by the provisions of the act and the rules and regulations prescribed by the Commissioner of Agriculture.

Latt Maxcy, the accused, contends that the information charges him with no crime under the laws of this State and because the act under which the information was filed is unconstitutional.

The argument of counsel that the information is bad because there is no such officer as citrus fruit inspector we deem to be unsound for the following reason: The term citrus fruit inspector is one which is applied to a person employed by the Commissioner of Agriculture to perform certain duties prescribed by Chapter 10103, as amended by Chapter 11875, Laws of Florida, 1927, under the direction and supervision of the Commissioner of Agriculture. Such a person is not an officer under the terms of those acts whatever may have been the official status of a person appointed by the Governor under the act before it was amended to perform the duties prescribed by that act.

Deeming that under the terms of the act the circumstances of appointment, duties and compensation constituted an office, the Legislature of 1925, by Chapter 10149, abolished it. The act created a "Division of Inspection" in the "Department of Agriculture." The inspectors for the Division of Inspection were to be appointed by the Governor. They were empowered and it became their duty when directed by the Commissioner of Agriculture to perform all the duties which theretofore had been performed by oil

inspectors, food, drug and fertilizer inspectors for the chemical division of the "Department of Agriculture" and by citrus fruit inspectors, and they were vested with the powers which those officers or appointees had theretofore exercised. Such an officer was Ellis Woodworth, relator in the case of State ex rel. Woodworth v. Amos, Comptroller, 98 Fla. 212, 123 So. R. 749, who was appointed under the provisions of Chapter 10149, *supra*.

But it does not follow that because the office of citrus fruit inspector was abolished that the Legislature was without power to provide for the employment by the Commissioner of Agriculture of persons to perform the same or similar duties under the direction and supervision of the Commissioner when by such legislation the duties, functions, responsibilities and powers necessary to be discharged and exercised to carry out the purposes of the act were transferred from citrus fruit inspectors, State chemist, inspector of chemical division and other functionaries to the Commissioner of Agriculture as was accomplished by Chapter 11875, *supra*.

The appointee of the Commissioner of Agriculture under the latter act became an employee of the department, a deputy of the Commissioner, designated by the name of citrus fruit inspector. But a name may not be the measure by which legislative power is determined. There is nothing inconsistent, certainly not invalid, considered as the exercise of legislative power in the provisions of Chapter 11875, *supra*, authorizing the Commissioner of Agriculture to employ citrus fruit inspectors to perform their duties under his direction merely because the Legislature had previously by Chapter 10149, *supra*, created a division of inspection in the Department of the Commissioner of Agriculture and provided for the appointment by the Governor of inspectors of that division who should perform the duties

of certain officers theretofore termed oil inspectors, food, drug and fertilizer inspectors for the chemical division of the department, and citrus fruit inspector.

It was merely a measure deemed to be wise in legislative thought to facilitate the execution of the purpose sought to be accomplished by Chapter 10103, *supra*, as amended. The citrus fruit inspectors thus appointed by the Commissioner of Agriculture were mere deputies of the Commissioner and may even be termed public appointees. Chapter 11998, Acts of 1927, which amends Chapter 10149, *supra*, merely changed the name of Division of Inspection to Bureau of Inspection.

Counsel's argument resolves itself into the proposition that because there exists an office under the laws of this State called Inspector for the Bureau of Inspection in the Department of the Commissioner of Agriculture, the holder of which has certain duties to perform under the supervision of the Commissioner of Agriculture, that the Legislature is powerless to authorize the Commissioner of Agriculture to appoint persons for a short period of time as his deputies to perform some of the duties under his direction which the inspectors for the bureau are required to perform. There is a fallacy in the argument which consists in the proposition that an office having once been created by the Legislature which possesses the elements of duration of term, appointment by the Governor, salary, and exercise of governmental power under the direction of a superior officer, that the Legislature may not authorize an employment possessing only the latter element in part. Even the element of salary does not exist in such appointment for the employment may be special and pay provided only for the particular service, and sovereign power is not even delegated and may not be exercised in the appointee's own

right. See State ex rel. Holloway v. Sheats, 78 Fla. 583, 83 So. R. 508.

The contention that the information fails to allege the commission of any crime under laws of the State because it does not allege that there was any force actual or by way of threat employed by the accused is not well taken. The information was prepared under the provision of Sections 12 and 13 of Chapter 10103, *supra,* which make it unlawful for any person to obstruct or resist any authorized inspector in the performance or discharge of any duty imposed upon or required of him by the provisions of the Act or any rule or regulation prescribed by the Commissioner of Agriculture and provides a punishment therefor.

The offense is analogous in some degree only to that of obstructing or resisting an officer in the execution of process or the performance of duty. The placing openly or surreptitiously of any element or compound in a liquid consisting of the juice of citrus fruits which the inspector was preparing to anlyze in the performance of his duty, which produces such a chemical or physical change in the fruit juice under analyzation as to prevent or render more difficult the work of analyzing the substance, constitutes a violation of the law, if such interference was without the knowledge and consent of the inspector. Force involving open resistance to the inspector would be no more effective than the small exertion of the force or energy by the accused necessary to surreptitiously place the foreign element or compound in the liquid. Force was used although not openly or in overt resistance. But even if the information was subject to demurrer or a motion to quash upon the ground stated it is not so defective as to make the point available on *habeas corpus*. See Johnson v. Fox, decided at this term.

Nor is the objection available in this proceeding that the

information fails to allege that the citrus fruit juice which the inspector was testing was from fruit intended for sale or transportation. Such an allegation obviously would be contradictory in terms if strictly applied though the information might have alleged that the juice intended for analyzation was obtained from samples of fruit intended for sale or transportation. There is a strong implication, however, that the juice was so obtained because the information alleges that the inspector was in the performance of his duty. In any event if there was a defect in pleading it is not of such material importance as to render the information so defective as to be available on *habeas corpus*.

The right to attack an information by *habeas corpus* is more limited than is permitted in motions to quash and in arrest of judgment. See Jackson v. State, 71 Fla. 342, 71 So. R. 332; Crooke v. Van Pelt, 76 Fla. 20, 79 So. R. 166; In re Robinson, 73 Fla. 1068, 75 So. R. 604.

The next attack upon the information is that Chapter 10103, *supra,* is void because the title is defective and the Act attempts to clothe an administrative official with legislative duties.

Neither of these objections are well taken. It may be conceded that the purpose of the Act is within the police power of the State. The protection of a large industry constituting one of the great sources of the State's wealth and, therefore, directly or indirectly affecting the welfare of so great a portion of the population of the State is affected to such an extent by public interest as to be within the police power of the sovereign. See Dutton Phosphate Co. v. Priest, 67 Fla. 370, 65 So. R. 282; Bailey v. Van Pelt, 78 Fla. 337, 82 So. R. 789; Hunter v. Owens, 70 Fla. 812, 86 So. R. 839.

There is no delegation of legislative power to the Commissioner of Agriculture because by Section 11 of Chapter

10103, *supra,* he is empowered from time to time as he deems expedient to make and promulgate rules and regulations for carrying out and enforcing the provisions of the Act. It is essential in the execution of governmental functions often to determine facts or ascertain a condition upon which the action of the law depends. As said in the case of Bailey v. Van Pelt, *supra,* if that were not true government would be futile. The Legislature, as the learned judge said in that case, may not delegate its power to make a law but it can make a law to delegate a power to determine some fact or state of things upon which the law's action depends.

The difference of opinion often arising in the discussion of this subject is not upon the principle announced but upon the question whether the specific regulation sought to be enforced is inherently legislative in character. Where the purpose of the law is to protect a great industry, such as is the subject of the Act under consideration, from injury, abuse, possible destruction by the shipping and selling in the open market to the people for consumption as food immature, unripe or diseased fruit, there is no objection to a statute which vests in an administrative officer the power to make rules and regulations under which the fact may be ascertained whether the fruit offered for sale or transportation measures up to that standard already determined by the Legislature to be mature, sound and wholesome and free from deleterious qualities, making for injury to the industry.

Now the information alleges in substance that while the inspector was engaged under directions prescribed by the Commissioner of Agriculture in trying to ascertain if the condition or state of things existed with reference to the particular fruit upon which the law acts, he was obstructed

in his work by the accused in such manner as constituted a violation of the provisions of the statute.

Nor is the Act defective because of its title. It is entitled An Act to "Prohibit the Sale or Transportation of Citrus Fruit that is Immature or Otherwise Unfit for Consumption and to Provide for Enforcement Thereof." The Constitution requires only that the subject of an Act shall be briefly expressed in the title. It requires that every law enacted by the Legislature shall embrace but one subject and matter properly connected with it. Sec. 16, Art. III, Constitution. The Act must not embrace two unconnected subjects. See Schiller v. State, 49 Fla. 25, 38 So. R. 706.

Greater danger of infringing upon the constitutional rule lies in giving an Act too restricted a title than in giving it a broad and comprehensive one. The title is restricted by undertaking to give too minute an index to the contents of the Act. It often happens in such cases that the Act is found to embrace subjects which do not lie within the terms of the restricted title and not constituting matter properly connected with such restricted subject. Such was the trouble with the Act involved in Ex parte Knight, 52 Fla. 144, 41 So. R. 786. See also Smith v. Chase, 91 Fla. 1044, 109 So. R. 94.

Provisions upon one subject and matter properly connected therewith are within the constitutional rule. Fine v. Moran, 74 Fla. 417, 77 So. R. 533.

It would avail little to discuss the proposition that a provision in an Act passed in the exercise of police power for the general welfare imposing a penalty upon all persons violating its provisions is matter properly connected with a subject briefly described as an Act to prevent the sale of immature citrus fruit for consumption and to provide for its enforcement.

It often happens that a subject is so broad in its scope

that many matters properly logically connected with it may severally be made the only subject of a discourse, but that fact is no proof that the subject of the discourse is not properly connected with the greater subject of the Act.

The information was not so defective as to be available to objection in a *habeas corpus* proceeding nor do we think the Act under which it was framed nor the penalty sought to be enforced for its alleged violation infringes upon any constitutional inhibition. The judgment discharging the prisoner, therefore, was erroneous.

It is ordered that the judgment be, and the same is reversed.

TERRELL, C. J., AND BROWN, J., concur.

WHITFIELD, P. J., AND BUFORD, J., concur in the opinion and judgment.

STRUM, J., not participating.