John T. Shepperd *et al.,* plaintiffs in error, *vs.* The County Commissioners of Sumter, defendants in error.

The act of February 16, 1876, requiring any person engaged in hiring laborers in this state for employment beyond the limits of the same, to procure a license and pay therefor one hundred dollars, and making it penal to carry on the business without such license, is constitutional. Money properly paid into the county treasury by a person who has applied for and obtained the license, cannot be recovered back, by mandamus or otherwise.

Constitutional law. License. Before Judge Clark. Sumter Superior Court. April Term, 1877.

Reported in the opinion.

S. C. Elam, for plantiffs in error.

B. P. Hollis, for defendants.

Bleckley, Judge.

The act of February 16, 1876, (Pamph. 17,) defines an emigrant agent to be any person engaged in hiring laborers in this state, to be employed beyond the limits of the same. It provides for a license, on payment of $100.00 into the county treasury, and makes it penal for any person to carry

on the business of an emigrant agent without first obtaining a license. In January, 1877, the plaintiffs in error, under the threat and the fear of being prosecuted and punished for carrying on business without a license, complied with the act, and their money went into the county treasury. They immediately applied to the county commissioners for an order upon the treasurer to refund it. The commissioners refused, and thereupon the plaintiffs petitioned for a mandamus. At the hearing, all the facts in the petition being admitted, the superior court refused the writ. This refusal is alleged to be erroneous.

The plaintiffs say the act of 1876 is unconstitutional, and that, as they paid their money under it, and in fear of prosecution, they are creditors of the county for the amount, and can recover it back. If they had a right, whether their appropriate remedy would be mandamus, *in the first instance,* we need not consider. The act seems to us constitutional. It requires a license as preliminary to carrying on a certain business, and exacts a license fee of one hundred dollars, which fee becomes county revenue. Whoever engages in the business is equally subject to the terms and provisions of the act. No discrimination is made in favor of residents over non-residents. It is said that the discrimination lies in requiring an expensive license as a condition of hiring laborers within the state to be employed beyond the state, without imposing a like burden on hiring for employment within the limits of the state. But the license required is for carrying on a business; and it does not appear that hiring for internal employment has become a business here, or is pursued as such by any person or persons. This is enough to dispose of the objection. But if it were otherwise, no authority has been cited, and we know of none, that would prevent the state from acting upon occupations (carried on within the state) in a way to incumber some of them with a tax or license fee, and leave other occupations, dissimilar in tendency, though not in nature, to the free will of those who might be inclined to engage in them. Suppose two

rival establishments were in active operation in our midst, one engaged in offering the laboring population inducements to leave, and the other engaged in offering them inducements to remain, could not the state discriminate between the two in police and fiscal legislation? Would she be obliged to grant the same indulgence, and show the same favor, to an instrumentality which tended to depopulate her territory, as to one of opposite tendency? It is true, that to go out of the state for employment, is not necessarily to remove or withdraw permanently; but, doubtless, a large per centage of hirelings who go out on contracts of employment never return. Persons who make it a business to hire laborers here for employment elsewhere, may be required to procure and pay for a licence. On the general subject, see Cooley on Tax. 384; 50 Ga., 530.

Judgment affirmed.