MILLER v. MICHIGAN STATE APPLE COMMISSION.

1. Taxation—Specific Taxes—Uniformity.
   A specific tax must not be discriminatory but must operate with uniformity upon all within a given class (Const. 1908, art. 10, § 4).

2. Same—Apple Act—Constitutional Law—Equal Protection—Classification.
   Tax levied under apple act applies without distinction to those who put their apples in the marts of commerce only since it is to "be paid prior to shipment" and constitutes a tax upon a privilege or right exercised by sanction of law that is not unconstitutional for failure to include all engaged in agricultural pursuits as the Constitution imposes no such restriction upon the legislature's power to classify subjects of taxation (Const. 1908, art. 10, § 4; Act No. 87, Pub. Acts 1939).

3. Same—Apple Tax—Public Purpose.
   Tax upon apples to be paid prior to their shipment for sale and to be used solely for advertising purposes and not for payment to apple growers or to any other particular individuals or class thereof is not unconstitutional as being levied for a purpose not public since the stimulation of the apple-growing industry in this State, which it must be assumed would be accomplished by such expenditures, would result in the increased prosperity of that industry and of necessity be reflected in the general public well-being throughout the commonwealth (Const. 1908, art. 10, § 4; Act No. 87, Pub. Acts 1939).

4. SAME—NECESSITY—PUBLIC WELL-BEING.

Necessity alone is not the test by which the State's power to tax is limited, as the legislature is not precluded from taxing for governmental ends subservient to the general well-being of society and for advancement of the present and prospective happiness and prosperity of the people.

5. SAME—APPLE TAX—PUBLIC PURPOSE.

The imposition of a tax upon apple growers who put their apples in the marts of commerce in order to raise a fund to be devoted exclusively to advertising apples is a tax for a public purpose (Act No. 87, Pub. Acts 1939).

6. SAME—APPLE TAX—PAYMENT UNDER PROTEST—INJUNCTION.

Act providing for tax on apples prior to shipment for sale is not invalid as a deprivation of property without due process of law or as a denial of equal protection because it failed to provide for payment of the levy under protest and because no provision was made for recovery of the tax paid in the event the act was later declared invalid as a tax law need not include such provisions since those subject to it may always act to restrain the collection thereof (U. S. Const. Am. 14; Act No. 87, Pub. Acts 1939).

7. SAME—APPLE TAX—PENALTY—CONSTITUTIONAL LAW—EQUAL PROTECTION.

Statute under which apple tax is levied is not invalid as contravening the first section of the Fourteenth Amendment of the Constitution of the United States because it contains a provision penalizing the violation of any provision of the act, where act provides each grower or grower's agent is entitled to free apple advertising stamps up to a maximum of 300 bushels and stamps do not have to be affixed until apples are ready for shipment as such penal provision would seem designed, not for subjecting one to a prosecution for neglect or inability to pay the specific tax, but rather for the purpose of subjecting one to prosecution who, by means of fraudulent or unlawful acts, evades or aids in the evasion of compliance with the provisions of the act (U. S. Const. Am. 14; Act No. 87, § 12, Pub. Acts 1939).

8. COSTS—PUBLIC QUESTION—CONSTRUCTION OF TAX STATUTE.

In suit to enjoin enforcement of act providing for taxation of apples because of claimed invalidity, no costs are awarded, inasmuch as a public question is involved (Act No. 87, Pub. Acts 1939).

WIEST and BUTZEL, JJ., dissenting.

Appeal from Oakland; Holland (H. Russel), Hartrick (George B.), Doty (Frank L.), JJ. Submitted October 11, 1940. (Docket No. 50, Calendar No. 41,120.) Decided February 7, 1941.

Bill by John T. Miller and others against Michigan State Apple Commission and others to enjoin enforcement of the Baldwin apple act (Act No. 87, Pub. Acts 1939). From decree for plaintiffs, defendants appeal. Reversed and bill dismissed.

*Fildew & DeGree* and *Pelton & McGee,* for plaintiffs.

*Thomas H. Read,* Attorney General, and *James A. Greene,* Chief Assistant Attorney General (*Miller, Canfield, Paddock & Stone,* of counsel), for defendants.

CHANDLER, J. At the last legislative session, there was passed Act No. 87, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 5169-1 *et seq.,* Stat. Ann. 1940 Cum. Supp. § 12.1220 [1] *et seq.*), known as the "Baldwin apple act." The title thereof reads as follows:

"An act relating to apples; declaring the public policy of this State to promote the consumption and sale of apples by providing a research and a publicity and sales promotion program to increase the consumption of Michigan-grown apples; levying an assessment on apple production and providing for its collection; creating an apple commission and vesting in it the administration of this act; providing for the powers, duties and authority of said commission; and providing penalties for the violation of this act."

Section 1 relates the various reasons for passage of the act. Section 3 provides for the creation of a commission to administer the provisions thereof. Section 4 provides that the commission should be a body corporate, to have and possess all the powers of a corporation. Section 9 provides:

"There is hereby levied and imposed upon all apples grown in the year 1939, and annually thereafter, an assessment of one cent per bushel or two cents per one hundred pounds of all apples grown and produced in Michigan, payable by the grower or grower's agent when shipped, whether in bulk or loose in boxes or any other container, or packed in any style package: *Provided,* That the provisions of this act shall not apply to apples sold by growers or growers' agents direct to cider and/or vinegar plants for use in making cider and/or vinegar: *Provided,* That each grower or grower's agent shall be exempt from said assessment on a maximum of 300 bushels of apples for each calendar year.

"All moneys levied and collected under this act shall be expended exclusively to advertise apples."

The bill of complaint herein, filed by several apple growers, seeks an injunction against the commission and others charged with the enforcement of the provisions of the act to restrain the enforcement thereof on the ground that the enactment is violative of constitutional restrictions. Three circuit judges, sitting in banc, held the statute to be unconstitutional and granted the relief prayed.

Michigan Const. 1908, art. 10, § 4, provides:

"The legislature may by law impose specific taxes, which shall be uniform upon the classes upon which they operate."

A specific tax levied under article 10, § 4, must not be discriminatory. It must operate with uni-

formity upon all within a given class. *C. F. Smith Co.* v. *Fitzgerald,* 270 Mich. 659, appeal dismissed, 296 U. S. 659 (56 Sup. Ct. 115, 80 L. Ed. 470). But plaintiffs claim that the selection of apple growers upon whom to levy a tax, out of all those engaged in agricultural pursuits, is an unreasonable and discriminatory classification, and that no reason exists why the apple grower should be singled out from all other fruit growers for taxation purposes.

The tax in question is a levy upon putting Michigan-grown apples in the marts of commerce. According to section 11 of the act hereinafter quoted, the tax is to "be paid prior to shipment" and in case the commodity is not placed in the channels of commerce, there is no liability to pay the tax. It applies only to those who put their apples in the marts of commerce and is applicable to all that class without distinction.

"Every laborer or farmer, merchant, mechanic, or professional man may be taxed for the privilege of pursuing his calling (Cooley, Taxation [2d Ed.], p. 570 *et seq.; Webber* v. *Virginia,* 103 U. S. 344 [26 L. Ed. 565]; *Shepperd* v. *Sumter County Commissioners,* 59 Ga. 535 [27 Am. Rep. 394]); and every merchant who sells goods, or farmer who raises and sells cattle, may be required to pay a tax for the privilege of selling (Cooley, Taxation [2d Ed.], pp. 31, 177, 578, 602). "The legislature may raise revenues by capitation taxes, by special taxes upon carriages, horses, servants, dogs, franchises, and upon every species of property, and upon all kinds of business and trades." *People* v. *Mayor, etc., of Brooklyn,* 4 N. Y. 419 (55 Am. Dec. 266); *Stuart* v. *Palmer,* 74 N. Y. 183 (30 Am. Rep. 289); *People* v. *Equitable Trust Co.,* 96 N. Y. 387; *President, etc., of Portland Bank* v. *Apthorp,* 12 Mass. 252; *In re McPherson,* 104 N. Y. 306 (10 N. E. 685, 58 Am. Rep. 502); 1 Desty, Taxation, p. 316. These are not taxes upon property, and have not usually been called

such. They are held to be taxes upon privileges or civil rights held and exercised by sanction of law." *Union Trust Co.* v. *Wayne Probate Judge,* 125 Mich. 487, 492.

Appellees state:

"We might well ask what justification can there be for imposing such a tax upon apple farmers and failing to impose a like tax upon the privilege of shipping peaches, potatoes, sugar beets and wheat.

"What logical connection with the object sought by the act has a classification which carves a class out of a class?"

According to this argument but one classification could be made of those engaged in agricultural pursuits. It would include all so engaged and no levy could be made upon any particular group included therein, whether they be dairymen, fruit growers, poultry raisers or occupied entirely in the production of grain, as all would come within a definition of the broad word "farmer." The Constitution imposes no such restrictions upon the power of the legislature to classify. This is patent from the examples collected in 26 R. C. L. Taxation, p. 249, § 221.

The primary purpose of the act, broadly stated, is to provide a source of revenue with which to stimulate sales of Michigan apples by advertising and other related means. It is claimed that this is not a public purpose. The argument in support of this theory is that the general welfare of the State is not benefited by the expenditure of the funds collected for the indicated purpose, but that the benefit, if any, will inure to only a small group engaged in the production of apples. We must assume that the advertising for which the funds are expended will accomplish the desired purpose, namely, stimulation of the use of Michigan apples, with a consequent

increase in production and distribution. Thus, the primary question is not whether the expenditure of public funds for advertising is a public purpose but whether expenditures to increase the use of apples produced in this State are for such a purpose. The leading authority in this jurisdiction as to what constitutes a public purpose is *People, ex rel. Detroit & H. R. Co., v. Township Board of Salem,* 20 Mich. 452, 475 (4 Am. Rep. 400), wherein Justice Cooley said:

"I do not understand that the word *public,* when employed in reference to this power, is to be construed or applied in any narrow or illiberal sense, or in any sense which would preclude the legislature from taking broad views of State interest, necessity or policy, or from giving these views effect by means of the public revenues. Necessity alone is not the test by which the limits of State authority in this direction are to be defined, but a wise statesmanship must look beyond the expenditures which are absolutely needful to the continued existence of organized government, and embrace others which may tend to make that government subserve the general well-being of society, and advance the present and prospective happiness and prosperity of the people."

Taxation for farm aid generally has been upheld as for a public purpose. See annotation 92 A. L. R. 770. We take it that appellees' argument would stamp all the expenditures referred to in those cases as not for a public purpose.

Statistics indicate that the consumption of apples has shown a marked decrease while that of citrus fruits, extensively advertised, has correspondingly increased. That the production of apples is not an infant occupation is settled from the fact that the average annual value of the crop in this State for the past 10 years has been $6,785,000, exceeding the

combined value of peaches, pears, grapes, cherries and plums.

We perceive that the stimulation of so large and important an industry will result in a benefit to the general public well-being, the increased prosperity of the entire apple-growing industry of necessity being reflected throughout the commonwealth. The funds expended are not paid to apple growers or to any other particular individuals or class thereof as was the case in *Michigan Sugar Co.* v. *Auditor General,* 124 Mich. 674 (83 Am. St. Rep. 354, 56 L. R. A. 329), appeal dismissed, 185 U. S. 112 (22 Sup. Ct. 581, 46 L. Ed. 829). We hold that the tax is for a public purpose.

"Next we consider the question, 'Is the tax imposed for a public purpose?' We held in an opinion prepared by Mr. Justice Ellis in the case of *Johnson* v. *State, ex rel. Maxcy,* 99 Fla. 1311 (128 South. 853, 857), that the protection of the citrus industry is a matter within the police power of the State. In that case it was said:

" 'The protection of a large industry constituting one of the great sources of the State's wealth and therefore directly or indirectly affecting the welfare of so great a portion of the population of the State is affected to such an extent by public interest as to be within the police power of the sovereign.' * * *

"So it cannot be reasonably contended that the protection and promotion of the citrus industry in Florida is not a matter of public concern or that the legislature may not determine within reasonable bounds what is necessary for the protection and expedient for the promotion of that industry. We are committed to the theory that advertising is a proper method for promoting the public welfare and that, therefore, the tax levied to provide funds for advertising serves a public end." *C. V. Floyd Fruit Co.* v. *Florida Citrus Commission,* 128 Fla. 565 (175 South. 248, 112 A. L. R. 562.)

The trial court found that the statute deprived the taxpayer of due process of law and equal protection of the law because it failed to provide for payment of the levy under protest and because no provision was made for recovery of the tax paid in the event the act was later declared invalid. We are aware of no requirement of law that a tax statute, to be valid, must provide for payment under protest and an action to recover taxes paid thereunder. Those subject to the tax can always act to restrain the collection thereof, as plaintiffs have done in this case.

It is claimed that the title of the act is not sufficient to embrace its objects. This question is presented, thoroughly discussed, and determined in *Kull v. Michigan State Apple Commission, post,* 262, which was submitted in this court simultaneously with the instant case. A discussion of this issue would be mere repetition of what we there said and adopted.

Plaintiffs further contend that the act is invalid because of the punitive provisions thereof. Section 12 provides:

"Any person who shall violate or aid in the violation of any provision of this act shall be guilty of a misdemeanor."

They claim this to be violative of section 1 of the Fourteenth amendment to the Constitution of the United States, and argue that it is an attempt "to hold apple growers guilty of a crime for failure to pay the apple tax while all other defaulting taxpayers are permitted to go free."

No cases are cited in support of this contention.

As we interpret section 12, it was not designed for the purpose of subjecting one to a prosecution for neglect or inability to pay the specific tax. Rather,

it is for the purpose of subjecting one to prosecution, who by means of fraudulent or unlawful acts, evades or aids in the evasion of compliance with the provisions of the act. For instance, section 10 provides:

"Every grower or grower's agent shall keep a complete and accurate record of the number of bushels or weight of apples handled, shipped or processed by him during each calendar year. Such record shall be in such form and contain such information as the commission shall by regulation or rule prescribe. Such records shall be preserved by such grower or grower's agent for a period of two years, and shall be offered and submitted for inspection at any time upon written or oral request or demand by the commission or its duly authorized agent or employee."

Section 11 provides:

"All assessments levied and imposed by this act shall be due and payable by the grower and shall be paid prior to shipment.

"The commission shall by rule or regulation prescribe the method of collection, and for that purpose shall require stamps to be known as 'apple advertising stamps' to be purchased from the commission and fixed or attached to the containers or to invoices, shipping documents, inspection certificates, releases, or receiving receipts or tickets when such apples are shipped. No Michigan apples shall be transported by any carrier, stored by any storage, or sold to any dealer until such advertising stamps have been fixed or attached by the grower of said apples. Any such stamps shall be canceled immediately upon being so attached or fixed, and the date of cancellation shall be placed on such stamps. Each grower or grower's agent shall be entitled to receive from the commission free apple advertising stamps up to a maximum of 300 bushels."

Other provisions of the act impose upon the commission the performance of certain duties. For a violation of these provisions or any other provisions of the act, the person or persons responsible therefor subject themselves to a prosecution under the provisions thereof.

The tax imposed is not upon apples or the production or growing thereof, but is a levy upon the privilege of putting Michigan-grown apples on the market. In order to put them in the channels of trade, the shipper must procure from the commission stamps, known as "apple advertising stamps," to be attached to the containers or to invoices, shipping documents, inspection certificates, releases, or receiving receipts or tickets when such apples are shipped. The shipper is also required to cancel the stamps so attached immediately, placing the date of cancellation thereon. It cannot be said that a prosecution for the evasion of this provision or for the violation of any of the other provisions of the act would contravene either the State or Federal Constitution. Neither can it be said that there is any discrimination in the method of enforcing the tax. In our examination of statutes, both Federal and State, providing for the imposition and collection of specific taxes, we find provisions similar to section 12 of this act in practically all of them. The point is without merit.

The decree is reversed, and one shall be entered in accordance with this opinion, dismissing the bill of complaint. Inasmuch as a public question is involved, no costs will be awarded.

SHARPE, C. J., and BUSHNELL, BOYLES, NORTH, and McALLISTER, JJ., concurred with CHANDLER, J.

WIEST, J. (*dissenting*). The tax is void. Taxes in this State must be for government purposes and

to that end may be specific. This tax is not an ex-cise, license, or occupation tax, but a specific tax on a product of agriculture and its assessment not within the police power or any power of the legisla-ture under the Constitution. The tax here involved is not in any sense for government purposes but an unauthorized tax to aid a particular private in-dustry. The act, No. 87, Pub. Acts 1939, authoriz-ing imposition, collection and expenditure of the tax negatives government control or supervision by its following provision:

"SEC. 7. The State of Michigan shall not be liable for the acts of said commission or its con-tracts. All disbursements shall be limited to the funds collected by the commission, and no member of the commission or any employee or agent thereof shall be liable on the contracts of the commission. All salaries, expenses, costs, obligations, and liabil-ities incurred by said commission shall be payable only from the funds collected by the commission under this act."

The Florida and California cases, cited by my Brother, are outside the general rule and contrary to the principle involved in the holding of this Court in *Michigan Sugar Co.* v. *Auditor General,* 124 Mich. 674 (56 L. R. A. 329, 83 Am. St. Rep. 354), appeal dismissed, 185 U. S. 112 (22 Sup. Ct. 581, 46 L. Ed. 829).

As stated in an annotation to the Florida case in 112 A. L. R. 576, using that case as an example:

"The comparatively few cases taking the view that the encouragement or promotion of an industry as a whole is a public purpose for which the taxing power may be validly exercised all relate to statutes passed in aid of agriculture."

In *People, ex rel. Detroit & H. R. Co.,* v. *Township Board of Salem,* 20 Mich. 452, at p. 484 (4 Am. Rep.

400), Mr. Justice Cooley, in discussing the power of taxation in this State, well said:

"By common consent also a large portion of the most urgent needs of society are relegated exclusively to the law of demand and supply. It is this in its natural operation, and without the interference of the government, that gives us the proper proportion of tillers of the soil, artisans, manufacturers, merchants and professional men, and that determines when and where they shall give to society the benefit of their particular services. However great the need in the direction of any particular calling, the interference of the government is not tolerated, because, though it might be supplying a public want, it is considered as invading the domain that belongs exclusively to private inclination and enterprise. We perceive, therefore, that the term 'public purposes,' as employed to denote the objects for which taxes may be levied, has no relation to the urgency of the public need, or to the extent of the public benefit which is to follow. It is, on the other hand, merely *a term of classification, to distinguish the object for which, according to settled usage, the government is to provide, from those which, by the like usage, are left to private inclination, interest or liberality.*"

In the same case on page 495, Mr. Justice Campbell said:

"Taxation for private purposes is no more legal than robbery for private purposes. And where an enterprise is conducted by private persons for their own private benefit, the public authorities having no control over the expenditure, and no share in the profits, it is a private enterprise and not a public one, whether large or small, and whether profitable or unprofitable. No enterprise can be properly regarded as a public enterprise in which the public has no voice."

If this tax is sustained it opens the door to like legislation in innumerable instances, of which but a few need be mentioned, such as peaches, cherries, strawberries, and potatoes, beans and other vegetables, and the producers will lose their individual rights by forced entry into a combine subjecting them to a tax for advertising purposes in an endeavor to induce purchasers from other States to buy here.  The tax of one cent per bushel or two cents per hundred pounds, levied and imposed upon all apples grown in this State, and payable upon shipment, except when sold directly to cider or vinegar plants, is a specific tax.  A grower, however, is exempt from the assessment to the amount of 300 bushels but, outside of home use, or sale to cider or vinegar plants, what may the producer do with them?

The State may not levy a specific tax for the stimulation of trade in apples, whether local or interstate, and what it cannot do directly it may not impose for the use and benefit of persons engaged in a private enterprise.

My Brother likens the instant tax to the Federal dole to farmers.  There is no analogy for there submission is voluntary and there is no assessment imposed.  Such a dole out of taxation would be void in this State. *Michigan Sugar Co.* v. *Auditor General, supra.*

The ''apple of discord'' seems to be with us still. Mother Eve gave the apple extensive advertising, and we still suffer the imposed penalty.

In mythology we read that the last labor of Hercules was in slaying the sleepless dragon who guarded the golden apples of the Hesperides.  We still have golden apples appealing to the sense of sight, and the growers thereof and of other apples

may not be placed within a tax enclosure for advertising purposes.

The act is unconstitutional and void, and the holding to such effect in the circuit court should be affirmed. The matter being of public moment, there will be no costs.

BUTZEL, J., concurred with WIEST, J.