In the Matter of the **REQUEST FOR an ADVISORY OPINION CONCERNING the CONSTRUCTION OF H.B. 1388 AS AMENDED BY H.B. 1389.**

No. 15302.

Supreme Court of South Dakota.

April 30, 1986.

TO HIS EXCELLENCY, WILLIAM J. JANKLOW, THE GOVERNOR OF THE STATE OF SOUTH DAKOTA

Pursuant to the authority vested in the Governor under Article V, § 5 of the South Dakota Constitution, you have requested an opinion of the Supreme Court on important questions of law involved in the exercise of your executive power. The factual basis of your request is:

The legislature recently enacted H.B. 1388 as amended by H.B. 1389 (hereinafter collectively referred to as the "Act") establishing the South Dakota Agriculture and Business Development Authority for the purpose, among others, of issuing bonds or other evidences of indebtedness to raise moneys to loan to or deposit with federal or state chartered banks, insurance companies and other institutions or associations described in Section 4(7) of the Act under terms and conditions which shall require such banks, insurance companies and other institutions or associations to make loans for the following primary purposes:

(i) to finance agriculture enterprises for purposes which include the acquisition, construction, reconstruction, rehabilitation or improvement of land, buildings, improvements thereto or personal property located within the state, as may be necessary or suitable for use in farming, ranching or the production of agricultural commodities or necessary or suitable for treating, processing, storing or transporting raw agricultural commodities;

(ii) to finance business enterprises for certain purposes which include works or improvements located within the state such as real property, buildings, equipment, furnishings and any other real or personal property or any interest therein, financed, refinanced, acquired, owned, constructed, recon-

structed, extended, rehabilitated, improved or equipped, directly or indirectly by the authority or through loans made by it and which are designed or intended for the purpose of providing facilities for manufacturing, industrial, processing, warehousing, commercial (including wholesale or retail trade), recreational, hotel, office, research, business (whether or not for profit) or other related purposes, including but not limited to machinery and equipment deemed necessary or desirable for the operation thereof; and

(iii) to refinance existing loans or working capital needs for agricultural or business enterprises.

In adopting the Act, the legislature included therein the following eight findings which describe in substantial detail existing conditions which immediately threaten the public peace, health and safety of the people and establish the necessity for the support of the state government and its existing public institutions:

(1) The high and increasing cost of agricultural land, improvements, equipment and breeding livestock and the high and increasing cost of current agricultural operating expenses creates an urgent demand for financing which is not available in the amounts needed and at reasonable interest rates in the present market and the inability on the part of persons engaged in agriculture to acquire land, modern agricultural equipment and improvements at reasonable financing costs or to finance working capital needs at reasonable interest rates makes it difficult for such persons to continue their operations at present levels;

(2) Such inability to continue agricultural operations decreases employment and results in unemployment and its attendant problems;

(3) The high costs of financing capital improvements and working capital requirements impose a heavy economic burden on businesses in this state;

(4) The viability of businesses in this state is threatened by the high cost of obtaining funds to meet general capital improvement programs and working capital requirements and the continued existence of business enterprises in and the attraction of new business enterprises to this state is desirable and necessary for the maintenance and expansion of employment opportunities in and the preservation of the economic well-being of this state;

(5) It is accordingly in furtherance of the interest and welfare of all the citizens of South Dakota that a public authority be established with power to issue revenue bonds and to make the proceeds available for loans to finance agricultural enterprises, to finance business enterprises, or to finance the working capital needs of businesses, or any combination of the foregoing, at interest rates lower than would otherwise be obtainable. It is intended that the authority so established be vested with all powers necessary to the accomplishment of these purposes and that this Act be liberally construed to accomplish such purposes;

(6) The lack of sufficient available credit to farmers and other businesses in this state at rates which are affordable is an immediate threat to the public peace, health and safety of the state. There is an immediate need to preserve the public peace, health and safety of the state by the issuance of bonds to raise sufficient funds to be deposited in financial institutions to permit such institutions to make loans to farmers and other businesses in order (i) to refinance outstanding loans which are or may become in default because of high rates of interest or the inabilities of farmers and other businesses to sustain profitable operations in view of the drastic down-turn in agriculturally based

economies, (ii) to enable farmers to purchase supplies from business enterprises to permit timely spring planting, (iii) to encourage, promote and develop alternative business and agricultural enterprises to employ workers from displaced farm families, (iv) to maintain and promote a level of economic activity within the state so that the revenues which support the state and its public institutions are not diminished;

(7) The foregoing conditions such as unemployment, displacement of farm families, loss of health and other employment benefits, use of out-dated, unsafe, inefficient or defective agricultural equipment and the like pose an immediate threat to the public peace, health and safety of the state and its people; and

(8) This Act is also in support of the state government and its existing public institutions because it expands, supplements and implements this state's prior activities and programs which have been undertaken to loan and extend credit to the people of the state for similar purposes.

Section 3(1)–(8) of the Act.

Based upon the findings listed above, the legislature determined, pursuant to Article III, §§ 1 and 22 of the South Dakota Constitution, that:

Whereas, this Act is necessary for the immediate preservation of the public peace, health and safety of the state and its people, and this Act is also necessary for the support of the state government and its existing public institutions, an emergency is hereby declared to exist, and this Act shall be in full force and effect from and after its passage and approval.

You inform us that fiscal and legal advisors to the state have raised questions concerning the validity of the emergency clause which puts in question your authority to immediately appoint members of the Authority provided by the Act and that because a multimillion dollar bond issue is

contemplated, it is necessary to ascertain by the opinion of this Court that the emergency clause in section 30 of the Act is within the power of the legislature so that the Act will be in full force and effect from and after the passage and approval by the legislature by a vote of two-thirds of all members elected of each House. The ability to give adequate assurance to purchasers of bonds issued pursuant to the Act is dependent upon the validity of the emergency clause if the state is to proceed forthwith.

Those sections of the South Dakota Constitution cited in the factual statement and relevant to your request state:

§ 22. *Effective date of acts—Emergency clause.*

No act shall take effect until ninety days after the adjournment of the session at which it passed, unless in case of emergency, (to be expressed in the preamble or body of the act) the Legislature shall by a vote of two-thirds of all of the members elected of each house, otherwise direct.

§ 1. *Legislative power—Initiative and referendum.*

The legislative power of the state shall be vested in a Legislature which shall consist of a senate and house of representatives, except that the people expressly reserve to themselves the right to propose measures, which measures the Legislature shall enact and submit to a vote of the electors of the state, and also the right to require that any laws which the Legislature may have enacted shall be submitted to a vote of the electors of the state before going into effect, except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions[.]

Article V, § 5 of the South Dakota Constitution provides, in part: "The Governor has authority to require opinions of the Supreme Court upon important questions of law involved in the exercise of his executive power and upon solemn occasions."

The financial plight of agriculture seriously affects the entire economy of this state and thus the state government. Because it is necessary to provide prompt and sufficient financing for the agricultural segment of our state, we accommodate your request for an advisory opinion.

Before addressing your specific questions, we designate the guidelines to the proper scope of review.

Whether an act falls within one of the two classes of laws that are excepted from the referendum by art. III, § 1 is a matter subject to judicial review. Whether an emergency exists within the meaning of art. III, § 22 is a matter solely for the Legislature to decide, however, so long as the law to which the emergency clause is attached in fact falls within one of the two excepted classes. *Gravning v. Zellmer*, 291 N.W.2d 751, 757 (S.D.1980); *citing Hodges v. Snyder*, 43 S.D. 166, 174–5, 178 N.W. 575, 577 (1920); *see also State ex rel. Richards v. Whisman*, 36 S.D. 260, 154 N.W. 707 (1915).

■ A legislative declaration of an emergency is a nullity where the act could not by any fair inference be said to fall within one of the two classes of laws that are excepted from the referendum by Article III, § 1. *Gravning, supra.* Although, any doubt must be resolved in favor of the legislature's declaration, *Gravning, supra; State ex rel. Wegner v. Pyle*, 55 S.D. 269, 226 N.W. 280 (1929); *State ex rel. Kornmann v. Larson*, 81 S.D. 540, 138 N.W.2d 1 (1965). Our review is limited to what appears upon the face of the act and facts within the Court's judicial knowledge. *Kornmann, supra.*

## I

Your first question is:

Is the Act a law necessary for the immediate preservation of public peace, health or safety so that the emergency clause validly renders the Act effective as of the date of its enactment pursuant to Article III, § 22 of the South Dakota Constitution?

The answer to this question is "yes." In a similar economic situation, the Court upheld a foreclosure moratorium law. *Culhane v. Equitable Life Assurance Society*, 65 S.D. 337, 274 N.W. 315 (1937). In upholding the moratorium law under the police powers of the state, the Court relied upon the recitals in the act, facts of which it took judicial notice, and resolved any doubt in favor of the legislative declaration. The eight findings of the legislature in the present Act clearly indicate it is immediately necessary to protect the social and economic interests of this state.

■ We take judicial notice that agriculture in this state is undergoing serious financial problems because of deflating land prices, low commodity prices, and high operating expenses. As a result, many of our lending institutions are having financial difficulties, which makes it extremely difficult for the agricultural sector to obtain adequate financing. South Dakota's main industries are farming and ranching, and we are unable to say the present Act is not immediately necessary to protect the social and economic interests of South Dakota.

In our prior decisions, this court has used the term "police power" synonymously with "preservation of public peace, health, or safety." Both terms can be used to identify one class of law exempted from referendum. *State ex rel. Kornmann, supra*, 81 S.D. at 549, 138 N.W.2d at 4 (citations omitted).

Many attempts have been made to define the term "police power" as applied to legislation. Justice Shaw, in the case of *Com. v. Alger*, (Mass.) 7 Cush. 53, said: "It is much easier to perceive and realize the existence and source of this power than to mark its boundaries, or prescribe limits to its exercise." However, in the same case this great jurist gave what is perhaps the best definition ever attempted, defining it as: "The power vested in the Legislature by the Constitution to make, ordain, and establish all manner of wholesome and reasonable laws, statutes, and ordinances, either

with penalties or without, not repugnant to the Constitution, as they shall judge to be for the good and welfare of the commonwealth and of the subjects of the same."

*State v. Central Lumber Co.*, 24 S.D. 136, 155, 123 N.W. 504, 510 (1909); *aff'd* 226 U.S. 157, 33 S.Ct. 66, 57 L.Ed. 164 (1912). More recently the Supreme Court of Wisconsin defined "police power" as "the inherent power of government to promote the general welfare.... It covers all matters having a reasonable relation to the protection of the public health, safety or welfare." *State v. Interstate Blood Bank, Inc.*, 65 Wis.2d 482, 490–92, 222 N.W.2d 912, 916 (1974) (citations omitted).

██ Measures to promote and protect a state's major industry are within a state's police powers. *Miller v. Michigan State Apple Commission*, 296 Mich. 248, 296 N.W. 245 (1941). "[I]t cannot be reasonably contended that the protection and promotion of [South Dakota's agriculture economy] is not a matter of public concern or that the Legislature may not determine within reasonable bounds what is necessary for the protection and expedient for promotion of that industry." *Id.*, 296 Mich. at 255, 296 N.W. at 247 *quoting Floyd Fruit Co. v. Florida Citrus Commission*, 128 Fla. 565, 578, 175 So. 248, 253 (1937).

## II

Your second question is:

Is the Act a law necessary for the support of the government or its existing institutions and programs so that the emergency clause renders the Act effective as of the date of enactment pursuant to Article III, § 22 of the South Dakota Constitution?

Under Article III, § 1, two classes of laws are exempted from referendum: (1) those necessary for the immediate preservation of the public peace, health, or safety of the state, and (2) those necessary for the support of the government and its existing public institutions. *Gravning v. Zellmer*, 291 N.W.2d 751 (S.D.1980) *citing Hodges v. Snyder*, 43 S.D. 166, 178 N.W. 575 (1920).

In H.B. 1388 as amended by H.B. 1389, the legislature declared that the Act was necessary for the immediate preservation of the public peace, health or safety. The legislature declared the Act was in support of state government and its existing institutions. As long as the law falls within one of the two classes excepted from referendum, the legislature may declare an emergency. Thus, for the emergency clause of the Act to be constitutionally effective pursuant to Art. III, § 22, we need only answer your first question. *Culhane v. Equitable Life Assurance Society*, 65 S.D. 337, 274 N.W. 315 (1937). Therefore, we decline to pass on your second question.

Respectfully submitted this 29th day of April, 1986.

JON FOSHEIM
Chief Justice
ROBERT E. MORGAN
GEORGE W. WUEST
RICHARD W. SABERS
Associate Justices

As noted in the advisory opinion, South Dakota Constitution Article V, § 5, provides, inter alia: "The Governor has authority to require opinions of the Supreme Court upon important questions of law involved in the exercise of his executive power and upon solemn occasions." The advisory opinion states, however, that we will accommodate the Governor's request because of the financial plight of agriculture and the necessity to provide prompt financing therefor. As a native son of Hand County, and having experienced the rigors of the dirty thirties, I fully sympathize with the plight of South Dakota farmers and the plight of American farmers in general, but, these are not constitutional reasons for accommodating the request.

On the contrary, this Court should accommodate a request only if we are justified under the Constitution and are being consonant with our duty thereunder. *In re Opinion of the Judges*, 58 S.D. 72, 74, 234 N.W. 671, 672 (1931). Otherwise, we should exercise extraordinary caution and

conservatism when answering such questions. *In re House Resolution No. 30*, 10 S.D. 249, 251, 72 N.W. 892, 892 (1897). *See also, In re Opinion of the Supreme Court*, 87 S.D. 399, 402, 209 N.W.2d 668, 670 (1973); and *In re Chapter 6, Session Laws of 1890*, 8 S.D. 274, 276, 66 N.W. 310, 311 (1896). Under this advisory opinion, it appears that this Court could very well accommodate any serious statewide question, triggered by economic adversity of divers industry, which surfaces in the future. This is not a correct basis for answering the Governor's request. However, because I conclude an *important question of law* exists, which involves the exercise of executive power, I agree that we should answer the Governor's request.

Before addressing the propriety of the emergency clause here in question, several legal concepts must be noted. First, regular legislative enactments take effect on the first day of July after its passage. SDCL 2-14-16. *See also*, South Dakota Constitution Article III, § 22. Second, legislative enactments containing a declaration of necessity and an emergency clause, become effective immediately or at such time as fixed by the legislature. *Hodges v. Snyder*, 43 S.D. 166, 175, 178 N.W. 575, 577 (1920). Third, the people have the right to refer any legislative enactment to a vote of the people *except* laws declared by the act to be necessary for the immediate preservation of the public peace, health, or safety of the state, or for the support of the government and its existing public institutions. *Baker v. Jackson*, 372 N.W.2d 142, 144 (S.D.1985). *See also*, South Dakota Constitution Article III, § 1; *Hodges*, 43 S.D. at 174-75, 178 N.W. at 577; and Lowe, *Restrictions on Initiative and Referendum Powers in South Dakota*, 28 S.D.L. Rev. 53, 55-56 n. 16 (1982). And fourth, an unwarranted and void emergency clause cannot prevent the filing of a proper referendum petition and the validity of such an emergency clause can be challenged by the timely filing of a proper referendum petition. *Kanaly v. State By & Through Janklow*, 368 N.W.2d 819, 828 (S.D.1985); *State ex rel. Richards v. Whisman*, 36 S.D. 260, 266-67, 154 N.W. 707, 708-09 (1915), *error dismissed*, 241 U.S. 643, 36 S.Ct. 449, 60 L.Ed. 1218 (1916).

Turning now to the propriety of this emergency clause, in *In re Opinion of the Judges*, 58 S.D. at 74, 234 N.W. at 672, this Court stated that an act which abolished the South Dakota Rural Credit Board and created a New Rural Board for the Management and Control of the System of Rural Credits, was not an act necessary for the immediate preservation of the public peace, health, or safety, and was not an act necessary for the support of the state government. Thus, based on that case, it can be reasonably asserted that the present act in question is not necessary for the immediate preservation of the public peace, health or safety or for the support of the state government. However, in *Culhane v. Equitable Life Assurance Soc. of U.S.*, 65 S.D. 337, 342-43, 274 N.W. 315, 318 (1937), we held that a moratorium law on foreclosures, when crops were poor, prices low, and drought affected the state, was a law relative to the state's economy and society and that "economy and society" were equal to a declaration that the law was necessary for the immediate preservation of the public peace, health and safety. Thus, the *Culhane* case appears to be more closely aligned with the present scenario, and based thereon, the first question can be answered affirmatively. Justice Polley appears to have written *In re Opinion of the Judges*, 58 S.D. 72, 234 N.W. 671, but he dissented without opinion in *Culhane*.

If this advisory opinion expressed that the Governor's multi-million dollar question involves an important question of law, and under the Constitution and our judicial duties thereunder, we are therefore required to answer it, I would be inclined to join it with a sharper appreciation. Nevertheless, I do join it upon the constitutional mandate of answering a most important question of law. And I do specially join it—upon that basis—employing *Culhane* as an underpinning.

FRANK E. HENDERSON
Associate Justice